FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 07, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS ARMANDO MERLOS-ORTIZ,<br><br>Defendant. | No.   4:22-CR-6018-RLP<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Before the Court is Defendant Carlos Armando Merlos-Ortiz's motion to dismiss the Indictment, charging him with one count of Alien in the United States After Deportation in violation of 8 U.S.C. § 1326. ECF No. 98. Oral argument was held on April 23, 2025. Mr. Merlos-Ortiz was present and represented by Craig Webster of the Federal Defenders of Eastern Washington and Idaho. Assistant United States Attorney Michael Ellis appeared on behalf of the Government.

Mr. Merlos-Ortiz argues the indictment must be dismissed based on flaws regarding his underlying order of removal. Specifically, Mr. Merlos-Ortiz contends he was deprived of his rights to due process and judicial review when legal errors barred him from pursuing

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1

a claim for cancellation of removal. He also argues his immigration attorneys provided ineffective assistance when they failed to submit an application for relief from removal under the Violence Against Women Act (VAWA). For the below reasons, the Court denies Mr. Merlos-Ortiz's motion.

BACKGROUND

Mr. Merlos-Ortiz is a citizen of El Salvador. He originally entered the United States in January 1998 without lawful status. ECF No. 98 at 2. In April 2001, Mr. Merlos-Ortiz was served with a "Notice to Appear" (NTA) to initiate removal proceedings. ECF No. 98, Exh. 1. The NTA did not include the date, time, or location of his removal hearing, but noted "date, time and place to be set." *Id*.

During the pendency of his immigration proceedings, Mr. Merlos-Ortiz sustained two criminal convictions. In 2006, he was convicted of contributing to the delinquency of a minor and sentenced to 90 days in jail. ECF No. 98, Exhs. 5 at 7, 24 at 29. In 2009, he pleaded guilty to one count of luring, after charges were reduced from an allegation of child rape. ECF Nos. 99-2, 99-3.

Mr. Merlos-Ortiz also had several contacts with law enforcement that did not result in convictions. In 2006, law enforcement found two guns and brass knuckles in the home Mr. Merlos-Ortiz shared with his then-wife. ECF No. 98, Exh. 22 at 5. In 2007, Mr. Merlos-Ortiz and his former wife were involved in an assault, resulting in Mr. Merlos-Ortiz being taken to jail. *Id*. And later in 2007, police responded to the home of Mr.

1  Merlos-Ortiz and his former wife after an individual "reported being assaulted because he
2  would not be 'jumped' into Mr. [Merlos-] Ortiz's gang." *Id*. Finally, in 2009, police
3  reported to the home of Mr. Merlos-Ortiz and his former wife due to a complaint of a
4  domestic disturbance. "The police report indicates [the couple's] children were present …
5  [and] visibly upset by the incident." *Id*.

6      Mr. Merlos-Ortiz was represented by Attorney Nicholas Marchi during his criminal
7  proceedings. Mr. Marchi then took over Mr. Merlos-Ortiz's immigration case. As an
8  apparent result of his criminal activity, Mr. Merlos-Ortiz was detained in custody for many
9  of his immigration hearings.

10      At an immigration hearing on August 10, 2010, Mr. Merlos-Ortiz appeared in
11  custody with Mr. Marchi. During the hearing, Mr. Marchi proffered information that Mr.
12  Merlos-Ortiz's U.S.-citizen wife had abused and neglected the couple's children. ECF 98,
13  Exh. 19 at 3-4. Mr. Marchi later filed court documents from a juvenile court case,
14  indicating Mr. Merlos-Ortiz's children had been removed from their mother's home due to
15  drug use and neglect. ECF No. 98, Exh. 22. Given the allegations of misconduct by Mr.
16  Merlos-Ortiz's wife, the judge at the August 10 hearing asked Mr. Marchi if there would
17  be an application for cancellation of removal under VAWA. Mr. Marchi responded, "Well,
18  I don't know if it would be VAWA cancellation on behalf of Mr. Merlos-Ortiz, Your
19  //
20  //

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3

Honor. He is in custody and he hasn't had…" ECF No. 98, Exh. 19 at 5.[1] Mr. Marchi never filed a VAWA petition on behalf of Mr. Merlos-Ortiz. Nor did he submit any statements from Mr. Merlos-Ortiz alleging that his wife had engaged in any form of abuse. At a later hearing on January 11, 2012, Mr. Marchi confirmed Mr. Merlos-Ortiz was not seeking VAWA cancellation. *See* ECF No. 98, Exh. 23 at 6.

After numerous scheduling delays and continuances, Mr. Merlos-Ortiz's substantive removal hearing (and merits hearing on his applications for relief) occurred on April 26, 2013. ECF No. 98, Exh. 24. At this point, Mr. Merlos-Ortiz had bonded out of custody. Mr. Marchi was not present but Elizabeth Knowles, an attorney from Mr. Marchi's firm, appeared as counsel of record. *Id*.

During the merits hearing, Ms. Knowles asked for relief of asylum, withholding of removal to El Salvador, relief pursuant to Article III of the UN Torture Convention, as well as cancellation of removal pursuant to INA Section 240A(b)(1). ECF No. 98, Exh. 24 at 3-4. The immigration judge deemed Mr. Merlos-Ortiz statutorily ineligible for non-LPR cancellation of removal because he did not have the requisite 10 years of continuous presence between his entry in 1998 and service of the NTA in 2001. ECF No. 98, Exh. 24 at 6. However, the judge noted that Mr. Merlos-Ortiz remained eligible for asylum, withholding of removal, Torture Convention relief, and asylum pursuant to INSA Section

---

[1] The subject matter of the discussion changed without Mr. Marchi finishing this comment.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4

Section 240A(b)(1).

Mr. Merlos-Ortiz testified at the hearing. He explained his three children were living with their mother, whom he was separated from at the time. ECF No. 98, Exh. 24 at 16. He testified he contributed $100 weekly in child support, and generally saw his children every Sunday and some Saturdays. *Id*. Mr. Merlos-Ortiz did not raise issues pertaining to physical abuse by his wife. He stated their relationship ended because his friend "took advantage" of his wife while she was scared, resulting in an extramarital affair. *Id*. at 35. During the hearing, the immigration judge stated: "I will note for the record as well that I did inquire with Mr. Marchi back in January if the respondent was seeking VAWA based relief pursuant to Section 240A(b), and he indicated he was not, so I just don't see any eligibility for cancellation of removal here." *Id*. at 11.

Following the hearing, the immigration judge issued a decision denying all Mr. Merlos-Ortiz's claims for relief and ordered him removed to El Salvador. ECF No. 98, Exh. 25. Mr. Merlos-Ortiz filed a timely direct appeal; his removal was affirmed. ECF No. 98, Exh. 27. He subsequently appealed to the Ninth Circuit. *See Merlos-Hortiz v. Holder*, No. 14-72404 (9th Cir. Aug. 6, 2014) (ECF No. 1). Due to issues with the administrative record, Mr. Merlos-Ortiz filed an unopposed motion to remand to the Board of Immigration Appeals to resolve record discrepancies, which the Court granted. *Merlos-Hortiz v. Holder*, No. 14-72404 (9th Cir. Feb. 2, 2015) (ECF No. 12).

In April 2017, the Board of Immigration Appeals again affirmed Mr. Merlos-Ortiz's

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5

1  removal order. ECF No. 98, Exh. 28 at 3. Mr. Merlos-Ortiz subsequently obtained new
2  counsel and on October 30, 2017, attorney Luis Romero filed a motion to reopen Mr.
3  Merlos-Ortiz's case. ECF No. 98, Exh. 30. As an alternative, Mr. Romero filed motion
4  asking the Board of Immigration Appeals to reissue its April 2017 decision so that an
5  appeal could be filed to the Ninth Circuit. *Id*. Mr. Romero argued that reopening was
6  warranted because Mr. Merlos-Ortiz was eligible for VAWA cancellation. *Id*. at 7.
7  Attached to the motion to reopen was a sworn affidavit from Mr. Merlos-Ortiz alleging
8  physical abuse by his former wife. *Id*. at 26. Mr. Merlos-Ortiz's affidavit states he told Mr.
9  Marchi he wished to continue pursuing potential relief from removal. *Id*. However, the
10 affidavit does not specify Mr. Merlos-Ortiz requested Mr. Marchi file an application for
11 VAWA cancellation. Mr. Romero filed a motion for emergency stay of Mr. Merlos-Ortiz's
12 removal, arguing that Mr. Marchi failed to file a VAWA application for relief. ECF No.
13 98, Exh. 31. But Mr. Romero did not file a new application seeking VAWA cancellation
14 for Mr. Merlos-Ortiz.
15     The Board of Immigration Appeals denied Mr. Merlos-Ortiz's motion to reopen.
16 ECF No. 98, Exh. 32. Notably, the judge found that "[e]vidence of the respondent's
17 allegedly abusive marriage, which ended in divorce in 2011, is not new and was in
18 existence at the time of the hearing in 2013. The alleged abuse is not supported by
19 affidavits or other material evidence documenting the claimed eligibility for VAWA relief,
20 and there is no completed application for this relief." (citations omitted).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6

1  Mr. Merlos-Ortiz timely appealed the denial to the Ninth Circuit. The appeal was
2  dismissed for failure to prosecute. *Merlos-Hortiz v. Whitaker*, No. 18-7045 (9th Cir. Jan.
3  14, 2019) (ECF No. 11).

4  During the pendency of Mr. Merlos-Ortiz's appeal, the Supreme Court issued its
5  decision in *Pereira v. Sessions*, 585 U.S. 198, 138 S. Ct. 2105 (2018), holding that a NTA
6  that fails to designate the specific time or place of the noncitizen's removal proceedings
7  does not trigger the stop-time rule. ECF No. 98, Exh. 33 at 3-4. Mr. Merlos-Ortiz filed a
8  second motion to reopen and stay his removal based on this precedent but was
9  removed to El Salvador while the motions were pending. ECF No. 98, Exh. 34. Although
10 this mooted his request for a stay, the Board of Immigration Appeals formally denied the
11 request for a stay two weeks later, and his second motion to reopen later that year. ECF
12 No. 98, Exh. 35. In its decision, the Board conceded that Mr. Merlos-Ortiz had the
13 requisite 10 years of continuous presence for cancellation of removal in light of *Pereira v.*
14 *Sessions*, but nonetheless found it unlikely that he would qualify for relief based on his
15 failure to meet other statutory requirements. ECF No. 98, Exh. 36.

16 In April 2022, Border Patrol agents arrested Mr. Merlos-Ortiz in Kennewick,
17 Washington. This prosecution followed.

18 //
19 //
20 //

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7

LEGAL STANDARD FOR COLLATERAL CHALLENGE

To collaterally challenge an underlying order of removal in a prosecution for illegal reentry, a defendant must establish: (1) they "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the proceedings giving rise to the order "improperly deprived the [defendant] of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." § 1326(d). All three § 1326(d) requirements must be satisfied. *United States v. Palomar-Santiago*, 593 U.S. 321, 327, 141 S. Ct. 1615 (2021).

The first requirement is limited to the administrative remedies that were "available" to the defendant. *United States v. Valdivias-Soto*, 112 F.4th 713, 723 (9th Cir. 2024) (quoting 8 U.S.C. § 1326(d)(1) and citing *Ross v. Blake*, 578 U.S. 632, 635-36, 136 S. Ct. 1850 (2016)). As to the second factor, a defendant has the "opportunity" for judicial review where "the doors to the courts were open" to him on more than one occasion, and he in fact made use of them. *United States v. Castellanos-Avalos*, 22 F.4th 1142, 1147 (9th Cir. 2022). The third requirement, that the underlying removal order was "fundamentally unfair," is satisfied where "(1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Valdivias-Soto*, 112 F.4th 713, 722 (9th Cir. 2024) (citing *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)).

//

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8

To demonstrate prejudice, the defendant must establish a "'plausible grounds for relief' from the removal order, that is, more than a theoretical possibility of relief." *United States v. Flores*, 901 F.3d 1150, 1162 (9th Cir. 2018) (quoting *United States v. Raya-Vaca*, 771 F.3d 1195, 1205–07 (9th Cir. 2014)). Where the relevant form of relief is discretionary, the defendant must "show that, in light of the factors relevant to the form of relief being sought and based on the 'unique circumstances of [the alien's] own case,' it was plausible (not merely conceivable)" that discretion would be exercised in his favor. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011) (quoting *United States v. Corrales-Beltran,* 192 F.3d 1311, 1318 (9th Cir. 1999)).

ANALYSIS

Mr. Merlos-Ortiz argues his removal is invalid because the immigration judge erred in finding him ineligible for non-LPR cancellation of removal and his immigration counsel were ineffective in failing to apply for VAWA cancellation of removal. *Id*. Each argument is addressed in turn.

*Non-LPR Cancellation of Removal.*

Under 8 U.S.C. § 1229b(b)(1), an alien's removal may be cancelled if the alien: "(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of an offense under [8 U.S.C. §§] 1182(a)(2), 1227(a)(2), or 1227(a)(3)] . . ..; and (D) establishes that removal

would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

Mr. Merlos-Ortiz argues he had a plausible claim for cancellation of removal under § 1229b(b)(1), but was deprived of the opportunity to present this claim due to legal errors by the immigration judge. Specifically, the immigration judge ruled Mr. Merlos-Ortiz did not meet the 10-year continuance presence requirement because the 2001 NTA stopped the accrual clock only three years after his arrival in the United States in 1998. But the 2001 NTA did not include the date, time, and place of a removal hearing. And in *Pereira v. Sessions*, which post-dated Mr. Merlos-Ortiz's 2013 merits hearing, the Supreme Court held that a NTA that does not contain a hearing date, time, and place, is insufficient to stop accrual of the 10-year time period. 585 U.S. at 202. Given the inadequacy of the NTA, Mr. Merlos-Ortiz continued to accrue time towards the 10-year continuance presence requirement, making him eligible for cancellation of removal.

Regardless of whether Mr. Merlos-Ortiz would have a plausible claim to cancellation of removal under *Pereira*'s clarification of the stop-time,[2] this does not help

---

[2] It is doubtful Mr. Merlos-Ortiz would have had a plausible claim for cancellation of removal, despite satisfying the 10-year continuous presence requirement. Among other potential problems, his criminal history would appear to have barred him from making a claim of good moral character.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10

him overcome the onerous requirements for collaterally attacking his prior order of removal. Mr. Merlos-Ortiz cannot establish that, regardless of any legal errors during the immigration proceedings, he was deprived of the "opportunity" for judicial review as required by 8 U.S.C. § 1326(d)(2). As set forth in the foregoing factual summary, Mr. Merlos-Ortiz received ample judicial review of his immigration claims over the course of several years, not only by immigration judges, but also the Ninth Circuit. This procedural history dooms Mr. Merlos-Ortiz's attempt to collaterally attack his removal based on legal error pertaining to the NTA stop-time rule. The Ninth Circuit has "only held defendants to have been deprived of judicial review under § 1326(d)(2) when there was no judicial review *whatsoever* of their removal order." *Castellanos-Avalos*, 22 F.4th at 1147. The fact that the judges reviewing Mr. Merlos-Ortiz's case may have gotten the law wrong, as later clarified by the U.S. Supreme Court, does not mean Mr. Merlos-Ortiz did not receive judicial review. *See United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (2023) (substantive error on availability of relief from removal "does *not* establish that an appeal is unavailable".) (emphasis in original).

    Mr. Merlos-Ortiz had every opportunity to argue the courts were misconstruing the NTA's stop-time rule. The fact that he did not successfully make this argument does not mean he was deprived of judicial review. Mr. Merlos-Ortiz is therefore precluded from collaterally attacking his 2013 order of removal based on the claim that he was deprived of the right to develop a claim for cancellation of removal under § 1229b(b)(1).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 11

*VAWA Cancellation of Removal.*

Under 8 U.S.C. § 1229b(b)(2)(A), a removal order can be cancelled if an alien can demonstrate (i) that he has been battered or subjected to extreme cruelty by a spouse who is a United States citizen; (ii) he has been physically present in the United States for a continuous period of not less than 3 years; (iii) has been a person of good moral character during such period; (iv) the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent.

Mr. Merlos-Ortiz contends he had a plausible claim for VAWA cancellation, but was precluded from presenting such claim due to ineffective assistance of counsel. Assuming, without deciding, that ineffective assistance of counsel can render administrative remedies unavailable and thereby enable a collateral attack despite the requirements of 8 U.S.C. § 1326(d)(1) and (2), Mr. Merlos-Ortiz's argument fails.

A claim of ineffective assistance of counsel requires a showing both inadequate performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. "[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 12

     Mr. Merlos-Ortiz has not rebutted the presumption of effective assistance. Mr. Merlos-Ortiz's attorneys clearly knew VAWA cancellation was an available form of relief from removal. Yet the record is silent as to why they did not pursue this relief. It could be that both sets of attorneys (Mr. Marchi and later Mr. Romero) were grossly incompetent and simply failed to keep their files straight. But the Court is prohibited from assuming incompetence when other options are possible. To the extent the decisions made by Mr. Merlos-Ortiz's attorneys can be attributed to reasonable strategy, they cannot be deemed ineffective. *Id*.

     The factual record before the Court fails to show that Mr. Merlos-Ortiz had an obvious VAWA claim. According to the record, the possibility of VAWA cancellation first came to light in 2010 when Mr. Marchi informed the immigration judge of child neglect and abuse allegations against Mr. Merlos-Ortiz's former wife. At that time, Mr. Merlos-Ortiz was in custody. He did not file any declarations or testify. Nor did he make any allegations that his wife had ever been abusive towards him. The juvenile court paperwork submitted by Mr. Marchi indicates Mr. Merlos-Ortiz had also subjected his children to harm and neglect. There was also evidence that Mr. Merlos-Ortiz may had been abusive towards his wife. By the time Mr. Merlos-Ortiz's case went to a hearing in 2013, he was out of custody. During his testimony, Mr. Merlos-Ortiz never suggested that the mother of his children had been abusive to him or his children.

//

The foregoing circumstances suggest strategic reasons for not bringing a VAWA claim at the 2013 hearing. Had Mr. Merlos-Ortiz testified to abuse by his wife during the merits hearing, it is likely that evidence of his own assaultive conduct would have been admitted. This not only could have undermined Mr. Merlos-Ortiz's VAWA claim, but also his requests for other forms of relief. Furthermore, given Mr. Merlos-Ortiz did not voice any criticisms or concerns about his ex-wife during the 2013 hearing, it is entirely possible that he did then not want to make any allegations against her. Accusing a current or former loved one of assaultive conduct is emotionally fraught. It is not unusual for someone who has been victimized by domestic abuse to decline going forward with an accusation. *See United States v. Carthen*, 681 F.3d 94, 103 (2d Cir. 2012) ("Victims of this type of violence are often protective of, and deny allegations against, their abusers"). Furthermore, by the time of Mr. Merlos-Ortiz's 2013 hearing, he appeared to be in a good place with his ex-wife. He was out of custody, regularly visiting with his children, and making child support payments. It is entirely possible—if not plausible—that Mr. Merlos-Ortiz instructed his attorneys not to make VAWA allegations against his ex-wife because he did not want to hurt her or his children.

Given that a VAWA petition was not filed in 2013, there were also strategic reasons for failing to file a petition at a later point in the proceedings. By the time of attorney Romero's involvement in 2017, substantial time had passed. It is unclear when Mr. Merlos-Ortiz had last interacted with his wife and children, but the record suggests the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 14

problems between Mr. Merlos-Ortiz and ex-wife were stale. *See* ECF No. 98, Exh. 32 at 2. While Mr. Romero originally indicated he would be seeking VAWA relief on behalf of Mr. Merlos-Ortiz and went so far as to file a supporting declaration, it is entirely possible that Mr. Romero came to have second thoughts about this strategy. Mr. Romero may well have determined (as did the Board of Immigration Appeals) that any domestic violence allegations by Mr. Merlos-Ortiz did not constitute new information and therefore would not have constituted legal justification for reopening the immigration case. An attorney does not perform ineffectively by failing to file a legal motion that would not result in relief. *See Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992).

The record does not support Mr. Merlos-Ortiz's claim that his attorneys performed ineffectively in failing to seek cancellation of removal under VAWA. As such, this second basis for collaterally attacking the order of removal fails.

Based on the foregoing, **IT IS ORDERED:**

1. Mr. Merlos-Ortiz's Motion to Dismiss, **ECF No. 98**, is **DENIED**.

2. Mr. Merlos-Ortiz's Oral Motion to Continue Trial is **GRANTED**.

3. The jury trial in this matter is scheduled for **June 9, 2025, at 9:00 a.m**. in Richland, Washington. Counsel shall appear in court for a Final Pretrial Conference at 8:30 a.m. on the first day of trial to address any pending pretrial matters.

4. Pursuant to 18 U.S.C. § 3161(h)(1)(D), the time between **January 6, 2025** (the date the motion was filed), and **May 7, 2025** (the date of this order), is DECLARED

1  EXCLUDABLE for purposes of computing time under the Speedy Trial Act.

2      5.    The pretrial conference is scheduled for **May 14, 2025, at 2:00 p.m**. in Richland, Washington. Counsel shall advise the Court regarding any dispositive change in the status of this case **at least five (5) working days prior to the pretrial conference.**

    6.    Defense counsel shall notify the defendant of all hearings and assure the defendant's attendance for court proceedings.

    7.    All pretrial conferences are scheduled to last not more than **thirty (30) minutes**, with each side allotted **fifteen (15) minutes** to present their own motions and respond to motions filed by opposing counsel. If any party anticipates requiring longer than fifteen minutes, that party must notify the Courtroom Deputy at least five (5) **working days** prior to the hearing. **Any party who fails to provide this notice will be limited to fifteen (15) minutes.**

    8.    Any supplemental jury questionnaire must be approved by the Court not less than three weeks before the trial date. Accordingly, should the parties propose an agreed supplemental questionnaire, it is due no later than one month before the trial date. Should one or more of the parties desire a supplemental questionnaire, but no agreement can be reached, that party shall file a motion for supplemental questionnaire, set for hearing without oral argument no later than one month before trial date. Counsel should note that a motion must be filed sufficiently in advance of the hearing date to allow for briefing and consideration by the Court.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 16

9. Further motions to continue this matter will not be granted absent exceptional circumstances that could not have been anticipated prior to issuance of this order. Should counsel seek an additional continuance, a motion shall be filed at the earliest practicable opportunity, but no later than **five (5) working days prior to said proceeding.** Movant **shall** provide (1) a detailed explanation of the new circumstances that justify the requested continuance; (2) a realistic assessment of the amount of time requested, (3) if applicable, Defendant's signed Speedy Trial waiver; (4) the position of all co-defendants and opposing counsel; and (5) the proposed new date. The Court will accept Defendant's digital signature on a speedy trial waiver if accompanied by counsel's verification of the authenticity of the signature. Additionally, any motions filed after the pretrial motion deadline will be considered at the pretrial conference.

10. A defendant on pretrial release should expect to be placed into custody immediately after conviction or change of plea if the provisions of 18 U.S.C. § 3143(a)(2) apply.

11. Trial briefs, proposed voir dire, jury instructions, verdict forms, exhibit lists, expert witness lists, and summaries of expert testimony shall be filed and served by all parties on or before **five (5) working days** prior to trial. This does not modify the parties' discovery obligations under Rule 16. Absent an agreement between the parties or an Order from the Court, the parties' discovery deadlines shall be governed by Local Criminal Rule 16.

1   12.    Under federal law, including FRCrP Rule 5(f), *Brady v. Maryland*, 373 U.S.
2   83, 83 S. Ct. 1194 (1963), and all applicable decisions from the Supreme Court and the
3   Ninth Circuit interpreting *Brady*, the Government has a continuing obligation to produce
4   all information or evidence known to the Government relating to guilt or punishment that
5   might reasonably be considered favorable to the defendant's case, even if the evidence is
6   not admissible so long as it is reasonably likely to lead to admissible evidence. *See United*
7   *States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009). Accordingly, the Court **orders** the
8   Government to produce to the defendant in a timely manner all such information or
9   evidence.
10      Information or evidence may be favorable to a defendant's case if it either may help
11  bolster the defendant's case or impeach a prosecutor's witness or other Government
12  evidence. If doubt exists, it should be resolved in favor of the defendant with full
13  disclosure being made.
14      If the Government believes that a required disclosure would compromise witness
15  safety, victim rights, national security, a sensitive law-enforcement technique, or any other
16  substantial government interest, the Government may apply to the Court for a modification
17  of the requirements of this Disclosure Order, which may include *in camera* review and/or
18  withholding or subjecting to a protective order all or part of the information.
19      This Order is entered under Rule 5(f) and does not relieve any party in this matter of
20  any other discovery obligation. The consequences for violating either this Order or the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 18

Government's obligations under *Brady* include, but are not limited to, the following: contempt, sanction, referral to a disciplinary authority, adverse jury instruction, exclusion of evidence, and dismissal of charges. Nothing in this Order enlarges or diminishes the Government's obligation to disclose information and evidence to a defendant under Brady, as interpreted and applied under Supreme Court and Ninth Circuit precedent. As the Supreme Court noted, "the government violates the Constitution's Due Process Clause 'if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.'" *Turner v. United States*, 582 U.S. 313, 315-16, 137 S. Ct. 1885 (2017) (quoting *Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627 (2012)).

13.    The Court utilizes the Jury Evidence Recording System (JERS) to allow evidence admitted for a trial to be viewed electronically via touchscreen monitor in the jury deliberation room upon the conclusion of the trial. Please note that the jury will receive a verbatim copy of the JERS exhibit list. The Court directs the parties to review and follow the instructions on the public website for specific instructions.

The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** May 7, 2025.



REBECCA L. PENNELL
DISTRICT COURT JUDGE

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 19